UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE A.C.,[1] | No. 2:26-cv-01339-TLN-CSK |
| Petitioner, | A# 244-625-780 |
| v. | |
| WARDEN OF THE CALIFORNIA CITY CORRECTIONAL CENTER, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on *pro se* Petitioner Jose A.C.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed a response to the Petition (ECF No. 8) and a Motion to Dismiss Respondents other than Petitioner's immediate custodian (ECF No. 9). For the reasons set forth below, Respondents' Motion to Dismiss is DENIED and the Petition is GRANTED. Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is not a U.S. citizen, but he was granted humanitarian parole into the United States through July 2026.  (*See* ECF No. 1 at 16.)

About July 15, 2024, Petitioner entered the United States through the CBP One process. (ECF No. 1 at 4; ECF No. 8 at 14.)  The next day, Petitioner was processed by immigration authorities and paroled into the United States with a notice to appear for immigration proceedings in 2027.  (ECF No. 8 at 7–8, 14.)  Petitioner's Form I-94 record shows Petitioner's presence in the United States is permitted on humanitarian parole through July 14, 2026.  (ECF No. 1 at 16.)

Since Petitioner entered the United States, he has been gainfully employed as a worker in a tomato factory in Maine and works to support his family.  (*Id.*)  He asserts he has complied with all immigration processes.  (*Id.* at 10.)  There is no order of removal for Petitioner.  (*Id.* at 13–14.) Also, Petitioner has no criminal history; he has never been convicted of a crime.  (*Id.* at 1; ECF No. 8 at 14.)

Despite Petitioner's parole status and lack of criminal history, on February 10, 2026, U.S. Department of Homeland Security ("DHS") detained Petitioner while he was on his way to work. (ECF No. 1 at 4.)  At 5:15 a.m., Petitioner boarded a bus for factory workers that was pulled over by U.S. Border Patrol agents.  (ECF No. 8 at 13–14.)  There was no warrant for Petitioner's arrest.  (*Id.* at 14.)

Since his arrest, Petitioner has not been afforded an individualized hearing as to his detention.  (ECF No. 1 at 5.)  Petitioner has now been detained over two months without an opportunity to be heard and he challenges the lawfulness of his civil immigration detention. (ECF No. 1.)

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**III.    ANALYSIS**

Petitioner claims his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.[2]  (ECF No. 1 at 5–6.)  The Court addresses each claim.

A.    Immigration and Nationality Act and its Implementing Regulations

Petitioner claims his detention is governed by 8 U.S.C. § 1226(a).  (ECF No. 1 at 5.)  Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (ECF No. 8 at 2.)

The Court need not resolve the dispute as to detention authority because, even assuming Petitioner is subject to 8 U.S.C. § 1225(b)(2), a clear exception to mandatory detention is humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).  DHS may temporarily grant urgent humanitarian parole to a noncitizen on a case-by-case basis, where either "urgent humanitarian reasons" or a "significant public benefit" justify their parole, and the noncitizen "present[s] neither a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b).  In other words, if a noncitizen has been granted humanitarian parole, it means DHS decided they do not pose a danger or flight risk.  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).

Here, Petitioner has produced a Form I-94 showing he was granted humanitarian parole for a term of two years, valid through July 14, 2026.[3]  (ECF No. 1 at 16.)  Respondents do not

---

[2]    Petitioner also makes an Administrative Procedure Act claim that his detention is arbitrary and capricious (ECF No. 1 at 6), however, the Court declines to rule on this cumulative claim seeking the same relief.

[3]    Petitioner's Form I-94 shows his class of admission is "DT" (ECF No. 1 at 16), which is the code for humanitarian parole under § 1182(d)(5).  *See Noori v. LaRose*, No. 25-CV-1824,

3

dispute Petitioner's evidence of parole.  (*See* ECF No. 8.)

With a grant of humanitarian parole, Petitioner is excepted from mandatory detention unless his parole is lawfully revoked or terminated.  Under the INA's regulations, parole can be terminated in two ways: (1) automatic or (2) by notice.  8 C.F.R. § 212.5(e).  First, parole is automatically terminated if the noncitizen departs the United States or if the term of parole expires.  8 C.F.R. § 212.5(e)(1).  Notice is not required for automatic termination.  *Id.*  Second, parole may be terminated by written notice to the parolee where the purpose of parole has been accomplished or when a proper DHS official determines that neither humanitarian reasons nor public benefit warrant the continued presence of the noncitizen in the United States. 8 C.F.R. § 212.5(e)(2).

Even where parole is properly terminated, if a final order of removal "cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a proper DHS official] the public interest requires that the [noncitizen] be continued in custody."  8 C.F.R. § 212.5(e)(2)(i).  "Stated differently, unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official.  Otherwise, implementing regulations require that a noncitizen be returned to humanitarian parole." *Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026) (internal citations omitted) (citing 8 C.F.R. § 212.5(e)(2)(i)).

Here, there is no evidence in the record that Petitioner's parole was terminated prior to his arrest.  First, Petitioner's parole did not automatically terminate under 8 C.F.R. § 212.5(e)(1).  Petitioner was detained in the United States while on his way to work in Maine, and there is no allegation before this Court that Petitioner otherwise departed the country.  (ECF No. 8 at 13–14.)  Additionally, Petitioner's parole record shows his admission is valid through July 14, 2026.  (ECF No. 1 at 16.)  Meaning, at the time of his arrest, Petitioner's parole term had not expired; it was valid for another five months.  Second, there is no evidence in the record that the reasons for

---

2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025).

parole have ceased, nor that Petitioner received any written notice of the termination of his parole. Instead, the Form I-213 produced by Respondents states Petitioner's apprehension was part of a surveillance operation that was not focused on Petitioner and no warrant was issued for his arrest. (ECF No. 8 at 14.)  Thus, Respondents did not lawfully terminate Petitioner's parole and his detention is in violation of the INA and 8 C.F.R. § 212.5(e).

<strong>B.    Fifth Amendment Procedural Due Process</strong>

Petitioner also alleges his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 5–6.)  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i.  Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"  *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

5

Petitioner has a clear liberty interest here.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  Since he was lawfully paroled into the country, Petitioner has established a life in the United States, found gainful employment, and worked to support his family.  Moreover, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody.").

In opposition, Respondents argue Petitioner has no right to freedom because his detention is mandated by statute.  (ECF No. 8 at 3.)  However, the Court has already found above that Petitioner was excepted from mandatory detention given his valid status under humanitarian parole.  Thus, Petitioner maintains his liberty interest.  With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

### ii.  Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Private Interest:  First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him.  Despite his interest in maintaining his liberty, Petitioner has now been detained for over two months, after Respondents unlawfully terminated his parole, without any opportunity to be heard as to the

justification of his detention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Risk of Erroneous Deprivation: Second, the risk of erroneous deprivation is high given that Respondents failed to follow their own regulations and Petitioner has not received any process, either pre- or post-detention. *See J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where the government revoked petitioner's release without following the process required by its own regulations, forcing petitioner to file a habeas petition to obtain relief, without evidencing petitioner's removal was actually reasonably foreseeable); *see also Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026) ("The risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of parole, thus depriving the noncitizen of process due prior to revocation.").

Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994.

Here, as discussed above, Respondents did not follow the regulations for terminating Petitioner's parole – neither notice, nor an individualized assessment of Petitioner's custody to justify continued detention. *See* 8 C.F.R. § 212.5(e). Thus, without sufficient procedural safeguards, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4. Moreover, in 2024, DHS necessarily found Petitioner was not a danger or a flight risk prior to granting him humanitarian parole. *See* 8 C.F.R. § 212.5(b). Respondents have not identified any change in circumstances nor obtained a final order of removal for Petitioner.

7

Additionally, the parties' papers both identify that Petitioner has no criminal history. (ECF No. 1 at 1; ECF No. 8 at 14.)  Therefore, this factor weighs sharply in Petitioner's favor given that Respondents failed to follow their own regulations and do not make any showing of a legitimate reason to detain Petitioner.

Government's Interest:  Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards.  Notice and custody determination hearings are routine processes for Respondents.  (Indeed, they are the very processes required in this case by 8 C.F.R. § 212.5(e).) Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").  The parole scheme seems to account for this reality, as it requires parole to continue after expiration unless there is an executable final order of removal or an individualized determination justifying a parolee's detention.  *See Caisa Telenchana*, 2026 WL 696806, at *7 (citing 8 C.F.R. § 212.5(e)(2)(i)).

The Court finds due process requires Respondents to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129.  Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case," nor do they supply a justification for circumventing their own regulations.  (*See generally* ECF No. 8.)

Yet, Petitioner was not provided any notice or warrant, nor was he given a pre- or post-

8

deprivation hearing in over two months of detention.  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.   CONCLUSION**

Petitioner is detained in violation of the U.S. Constitution and federal law and he must be released.[4]  Accordingly, IT IS HEREBY ORDERED:

1.  Respondents' Motion to Dismiss (ECF No. 9) is DENIED.[5]

2.  The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

3.  Respondents must IMMEDIATELY RELEASE Petitioner Jose A.C. (A# 244-625-780) from custody and return him to humanitarian parole.  Respondents shall not impose any additional restrictions on him.  At the time of release, Respondents must **provide a copy of this Order to Petitioner** and return all of Petitioner's documents and possessions.

4.  **Respondents must file a notice of compliance with this Order by April 22, 2026.**

5.  To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the

_____

[4]     The Court does not take seriously Respondents' contention that the appropriate remedy here is a bond hearing.  Petitioner's humanitarian parole is valid as he sits in detention.  Respondents do not make any argument, let alone a credible one, that Petitioner's parole was validly revoked or he was lawfully arrested.  The only appropriate remedy here is to release Petitioner from unlawful detention.  *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi*, 542 U.S. at 536) ("Habeas is at its core a remedy for unlawful executive detention . . . [and] [t]he typical remedy for such detention is, of course, release."); *Preiser*, 411 U.S. at 484 ("the traditional function of the writ is to secure release from illegal custody."); *Pinson v. Carvajal*, 69 F.4th 1059, 1070 (9th Cir. 2023) ("the history of habeas corpus demonstrates why release from confinement is the only available remedy for claims at the writ's core[.]").

[5]     This motion seeks to dismiss Respondents other than Petitioner's immediate custodian.  The Court has previously addressed this issue.  *See Gabino C.B. v. Warden Cal. City Corr. Ctr.*, No. 2:26-CV-00655-TLN-CKD, 2026 WL 890584, at *1 (E.D. Cal. Apr. 1, 2026).  Given that Petitioner has properly named his immediate custodian and future injunctive relief is warranted for the additional Respondents who exercise legal control over immigration enforcement for Petitioner, the Court declines to dismiss the additional Respondents.

reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

6. The Clerk is directed to serve the **California City Correctional Center** with a copy of this Order.

7. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: April 20, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE